The last case, Antunes, I mispronounced it, versus Becerra, he's the Secretary of Health Education, Department of Human Services, right? Yes, Your Honor, that's correct. And, but the appellant, Mr. Lloyd, you're the first one. Is that you? Yes, Your Honor. All right. Glad to have you here. Good afternoon, Your Honor. Thank you. May it please the court, Scott Lloyd, on behalf of the appellant, Katherine Antunes. UVA and the Secretary of Health and Human Services were implicated in the termination of Ms. Katherine Antunes, the nurse for UVA's hospital in Charlottesville. UVA's actions in that termination were unlawful because assaults coerced Ms. Antunes to accept medical treatment that she did not want. And HHS had an obligation, both to ensure that this sort of thing did not happen and to extend the same protections to her that it would extend to trial- What do you think of the- Vaccines. Do you think that Mr. Becerra is running UVA? No, Your Honor. No, but you sued? We sued both the FDA and everybody. You're right. The Secretary. No, so it's two separate claims, but they're related to one another. I think that, well, the theory of the case is that the Department of Health and Human Services had obligations in the distribution of its EUA or emergency use authorized materials to provide protections to the recipients of those drugs because they were approved not through the usual approval methods, but through the emergency approval methods. Judge Boone didn't think much of your case. That's correct, Your Honor. He did dismiss on all counts. That's correct. And so Ms. Antunes, she offered four theories as to why UVA's actions were unlawful and two theories as to why HHS's actions were unlawful. And if we could begin with bodily integrity, and we'll start with Katherine Antunes as a person and her particular bodily integrity. She, like all Americans, enjoys this constitutional right. The Supreme Court in Kruzan v. Director, it quoted Judge Cordozo, who put the concept in the following words. Every human being of adult years and sound mind has a right to determine what shall be done with his own body. And a surgeon who performs an operation without his patient's consent commits an assault for which he is liable and damages. But how does she have standing against the governmental agencies? Well, so on the question of standing against the government agency, the government quotes or cites a couple of cases. I just wanna get the name of Simon v. Eastern Kentucky and Lujan v. Defenders of Wildlife. So in Simon, the plaintiffs were an indigenous population and they were claiming that the Department of Treasury was making some regulation that affected tax policy that would then go on to affect their desirability as people who would get hired. And then in Lujan, the claimants were making an argument that the Department of Interior, if they made some regulatory adjustment, it would affect an endangered species in Africa. And they would then have difficulty enjoying the observation of that species if they ever went to Africa. And the court said, well, the harms here are too far removed. But here, what we're arguing is that HHS had a direct responsibility to Ms. Antunes as a recipient of a drug that it approved under the emergency use authority. But HHS never directed UVA. They did not direct the policy regarding vaccines for UVA. You would agree, right? They did not directly, no. Our argument is that they instead had an obligation as direct statutory obligation to provide information about the option to decline the vaccine in this case. And- Mr. Lloyd, could you address redressability as to the federal defendants? Well, I think that as we said in our brief, that it's a totality of circumstances and it's a- Yeah, but the federal defendants don't have any ability to give you the relief that you want. So why are they in this lawsuit? Well, the argument is that had the federal defendants carried through their statutory and constitutional obligations, none of this would have ever happened. In other words, they would have been disincentivized from firing Ms. Antunes in this way. What are you saying that the secretary shouldn't have allowed the approval of the COVID vaccine? That would- Take care of it? Ours is a separate argument. I think that that's a question that is under the secretary's discretion. But what isn't under his discretion is providing the option of declining, providing a framework under which recipients of the vaccine as an emergency use drug have the ability to decline using the drug. And that's the duty that the government failed to carry out in this case. And that was part and parcel of her termination. And another way to put it is, if we were just to bring suit against UVA, we would be leaving someone out because we do believe that HHS had a duty that they failed to carry through in this case. But speaking of the question of bodily integrity, it's both a legal term, but it's also a philosophical term. And as a philosophical one, it speaks to a person's presence within the world. And within that zone of protection, other people, they're protected from unwanted contact, penetration, injection, and incision. And I mentioned philosophy only to point out that once you think about it as a philosophical term, you see its expression all throughout the law. And so we see its expression in laws against battery and rape, against sexual assault and sexual harassment. Four-form informed consent and in constitutional law in the Fourth Amendment, the right of a person to be secure in this person. And the 14th Amendment concept of bodily integrity. Kruzan noted that bodily integrity was highly regarded in the common law. And to that point, it quoted an 1891 case, Union Pacific v. Botford, which said that no right is held more sacred or is more carefully guarded by the common law than the right of every individual to the possession and control of his own person, free from all restraint or interference of others, unless by clear and unquestionable authority of law. The court then also noted that it found this notion  but also the right to privacy. And so speaking again of Ms. Antunes, I think we would all agree that there would not be any medical rationales or medical safety rationales that would justify Ms. Antunes' corporal punishment as an employee of UVA. And there's no medical justification that would make that not battery. And a forced sexual encounter, even if there was some medical safety rationale, it would still be rape or sexual assault. And in a coerced sexual encounter or attempted one would still be sexual harassment, even if there was some medical justification, whatever that might be. But when we turn to medical battery, we have to pause for a minute. We might be able to agree that the forcible removal of her kidney for one of their patients, for UVA's patients, would be medical battery. And we would say the same thing about coercion, that she would lose her job if she didn't donate a kidney. But that line is actually fuzzy on the law because if we take that concept and we apply it to forced sterilization, then that leads us to the holding in Buck versus Bell. Buck versus Bell is the consequence of Jacobson versus Massachusetts, which UVA relies on as its reason for its actions being lawful. Buck versus Bell, I don't think I'm saying anything controversial or surprising to the court to say that it hasn't been overturned. It's not favored and it's not used, and it offends modern sensibilities, but forced sterilization does not offend case law, at least as things currently stand. And so returning to corporal punishment, that was something that was actually not always unlawful in the employment context. That was something that changed in the 1840s. And then sexual harassment, as we briefed, was not something that became unlawful until the 1970s. And what changed? Well, the law was catching up with changes that had occurred in culture and society. And so back to Cruzan. We assert in our briefs that Cruzan represents a development in the concept of bodily integrity, and it states unequivocally, the principle that a competent person has a constitutionally protected liberty and juris in refusing unwanted medical treatment may be inferred from our prior decisions. What about Jacobson? Well, okay. I don't wanna talk about that one. Well, actually, I think the next sentence, they speak about Jacobson, and we acknowledge that, but it just speaks of Jacobson, not as providing any sort of legal or intellectual framework, but just to note that bodily integrity was part of the court's analysis in Jacobson. And so- And they also, they didn't use the words, I guess, on a rational basis, but they also said the government, talked about the government's interests in terms of smallpox vaccine, right? Right, right. And so that's sort of what we're coming to, actually. And so Cruzan mentions Jacobson, the briefing mentions Jacobson. Jacobson is there, and it's something that we need to talk about. So what did Jacobson do? Essentially, it applied a rational basis, and it balanced the police power of the state against the individual civil liberties of an individual who didn't wanna take the smallpox vaccine. Both of these concepts, the individual liberties and the police power of the state have undergone revolutionary changes in terms of its understanding since 1905. And furthermore, the briefing in this case from UVA, it states several courts that are purported to have relied on Jacobson in order to come to the conclusion that COVID-19 vaccine is, mandates are not a problem. But if you look more closely at the case law, we have Lukaszek versus Cook County, but that case, I think, is actually instructive because it distinguished Jacobson as factually distinct because it was dealing with the smallpox, in part, because it was dealing with smallpox where we're talking about COVID, which are much different things. And then it noted Jacobson just to say that they're going to go on to also apply a rational basis. We go, there's We the Patriots versus Hochul, and those plaintiffs were arguing that the Supreme Court had impliedly overturned Jacobson, which is an argument that we're not making here. Valdez versus Grisham, the plaintiffs never articulated her bodily integrity argument, and the judge just declined to guess for her and didn't mention Jacobson at all. Cariotti versus Regence, the court cited Jacobson just to say that they're, again, going to apply a rational basis. And so what's that mean for this analysis? We would suggest that taking all this together along with Justice Gorsuch, he addressed Jacobson briefly in his concurrence of Roman Catholic Diocese of Brooklyn versus Cuomo, but his encouragement was to not assign too much importance to Jacobson. And so what we would say for this case is that we think the safest approach is to take the approach that the Seventh Circuit took, which is leave Jacobson confined to its four corners, that of a mandate from a state legislature in the context of smallpox in 1905. And so that speaks to UVA, and I think that we, at the outset, spoke about the government defendants. We do think that they played a part in this and to leave them out of the equation would be to have an incomplete expression of what we thought the wrongs were. And so with that, unless there are any questions, I've reserved some time for rebuttal. Thank you very much, Mr. Lloyd. Thank you. Mr. Eberstadt. Good afternoon. May it please the court, Rick Eberstadt for the University of Virginia and with me at council table is Solicitor General Andrew Ferguson. UVA Hospital did not violate Catherine Antoon's constitutional rights when it required her as a nurse in a hospital during an infectious disease surge to become vaccinated against that disease if she wished to continue working in the hospital. To expand briefly on why that's the case and to respond to some of my friends on the other side's arguments, Antoon's substantive due process argument is foreclosed by Supreme Court precedent here. Substantive due process claims face rational basis review unless a fundamental right is implicated. And the Supreme Court made clear in Jacobson, as my friend on the other side concedes, that there wasn't a fundamental right issue in refusing vaccination and that that question receives rational basis review. The Supreme Court held that in Jacobson and every federal court of appeals to address that question since has applied rational basis. Contrary to Antoon's view, Jacobson definitively is the law. And this court should not set it aside. This court should follow it and apply it here. The Supreme Court has never overruled that case. And instead it has cited it repeatedly since, including in the case Kruzan, which my friend on the other side raises. Now, Kruzan held that there is a liberty interest in refusing unwanted medical treatment for oneself to impact one's own health. But Kruzan actually cited Jacobson for the proposition that that liberty interest is not absolute. And Jacobson involves a different fact pattern where infectious diseases that might affect other people are involved and vaccinations are involved. Again, that question receives rational basis review. UVA Hospital easily clears rational basis review here. The test is whether the policy has a rational relationship to a legitimate government interest. The legitimate government interest here is protecting the lives and health of staff and patients, including vulnerable patients during a surge of an infectious disease. And the rational relationship between this policy and that interest is at the time there was overwhelming consensus, including by the FDA and CDC, that these vaccines in question were safe, that they were effective, that they reduced transmission and serious illness. The policy easily passes this test. Antunes cannot even come close to meeting her burden here to show that there was no reasonable justification and to show that there was, to negate every conceivable basis that might support the policy. And several other federal courts of appeals have reviewed the same question and reached the same conclusion. In fact, there was some discussion just now of Lukasik. Lukasik did discuss Jacobson and held that Jacobson does apply here. And that court applied rational basis and determined that a vaccination requirement very much like the one at issue here should be upheld. Every federal court of appeals to face this question has done the same thing. UVA's vaccination requirement receives rational basis review and passes that test. And for that reason, Antunes' substantive due process claim fails. Unless this court has any questions, we are happy to rest on our briefs for the remaining arguments. Thank you very much, sir. Thank you very much. Appreciate your work. Mr. Janda. Thank you, your honor. And may it please the court, Sean Janda for the federal government. Is the district court correctly held? And as our brief explains, there are a number of threshold problems with the plaintiff's attempt to leverage her termination by UVA into claims against the federal government. And I think the most straightforward one is redressability. So the injury that she complains of is her termination by UVA and the relief that she seeks on her claims against the federal government, this is a JA-24, is an order of setting aside and declaring unlawful the issuance of the EUA for COVID vaccines. But even if she were to win on the merits of her claims and receive that relief, nothing about such an order would compel UVA to rehire her or would otherwise redress the injury that she has alleged. And so I think that's sort of a sufficient basis to affirm the dismissal of the claims against the federal government. I'm happy to address any questions the court might have, but in the absence of any questions, we just ask the court to affirm. Thank you very much, sir. Well, we appreciate your work. We're happy to take your case under advisement. And Madam Clerk. Oh, we got to get him a rebuttal. Yep, you got Mr. Lloyd. I apologize to you, Mr. Lloyd. That's all right. I'm getting tired. I've been sitting here for a long time. I know the feeling you're on. So I think I just have a brief couple. You're already here. Thank you. Now, as to the rational basis review, we are not contesting that there's a different analysis that would be appropriate here. We just have been making the argument that we haven't had a chance to have this discussion about a rational basis. We haven't had a fact finding or the opportunity for discovery. This is an appeal of a motion to dismiss. I think that we would also say that presenting a communicable disease in a healthcare setting is a compelling state interest. But the question is whether UVA's actions were rationally related to that compelling state interest. And we would say that we would be able to challenge the rationality of those actions. And in fact, the state court, at least to the application of UVA's religious accommodation, religious accommodations have found that they acted in an arbitrary and capricious manner. And they did not cross that threshold of rational basis. And yes, unless there are any questions from the court, that concludes our comments. Thank you, Mr. Loy. Thank you. Again, I appreciate all the lawyers and their work in the case. We'll take it under advisement. And Madam Clerk, with that, we're gonna come down and greet counsel and we'll adjourn court until 8.30 tomorrow morning. This honorable court stands adjourned until tomorrow morning. God save the United States and this honorable court.
judges: Robert B. King, DeAndrea Gist Benjamin, Barbara Milano Keenan